**Mrs. Dean BROWDER,**
**Petitioner-Respondent,**

**Glen Gray, Respondent,**

v.

**James PETTIGREW, d/b/a Pettigrew**
**Motor Company, Respondent,**

**Ford Motor Company,**
**Respondent-Petitioner.**

Supreme Court of Tennessee.

Aug. 30, 1976.

Lloyd Tatum, Henderson, for petitioner-respondent Browder.

Sidney W. Gilreath, Patricia N. Rechichar, Knoxville, for amicus curiae The Tenn. Trial Lawyers Ass'n.

W. R. Menzies, Jr., Menzies, Rainey and Kizer, Jackson, for respondent Pettigrew.

Thomas F. Johnston, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for respondent-petitioner Ford Motor Co.

David R. Farmer, Waldrop, Hall, Tomlin & Farmer, Jackson, for respondent Gray.

1. The plaintiff Browder also sought damages from Nancy Gray and Glen Gray, the driver and owner of the automobile involved in the accident, alleging that the accident was proximately caused by the negligence of Nancy Gray, as agent of her husband, in the operation of the automobile. The action against the Grays was nonsuited.

OPINION

COOPER, Chief Justice.

These are products liability actions arising out of an automobile accident which occurred on March 24, 1971, on U.S. Highway 64 in McNairy County, Tennessee. Petitioner, Mrs. Dean Browder, filed a complaint against the Ford Motor Company and a retail Ford dealer, James Pettigrew, d/b/a Pettigrew Motor Company, alleging that she had sustained personal injuries in a one-car accident caused by the collapse of the A-frame supporting the right front wheel of the 1971 model Mach I Mustang automobile in which she was riding as a passenger. The complaint charges the defendants with negligence, expressly relying on the doctrine of res ipsa loquitur; breach of express and implied warranties; strict liability in tort; and tortious misrepresentation based on public advertising.[1]

Glen Gray, the owner of the automobile involved in the accident, also filed an action against Ford Motor Company and James Pettigrew to recover for damages to his automobile.[2]

The actions were consolidated for trial. At the close of plaintiffs' proof, the trial judge directed verdicts in favor of the defendants, Pettigrew and Ford Motor Company and dismissed both actions.

The Court of Appeals concluded from its review of the evidence that the plaintiffs had failed "to prove a defect in the vehicle which render[ed] it unreasonably dangerous to the user" and affirmed the trial judge's action in directing verdicts on the several theories of liability, except for the claims against Ford Motor Company predicated on the doctrine of res ipsa loquitur, which were reversed and remanded for trial.

2. Recovery of damages by Gray was sought on the same theories as alleged in the Browder action against Ford Motor Company and Pettigrew. However, a nonsuit was taken in the action against Ford Motor Company on the charges of "breach of express warranty and misrepresentation," and in the action against Pettigrew on the charges of "breach of implied or express warranties and misrepresentation."

This court granted the petitions for certiorari filed by Mrs. Browder and the Ford Motor Company[3] to consider:

(1) the apparent inconsistency in the granting of a new trial on the claims for damages predicated on the doctrine of *res ipsa loquitur* while, at the same time affirming the directed verdicts on the other theories of liability; and

(2) whether there is material evidence in the record which requires the submission of the actions to the jury under any of the theories of liability plead.

Counsel for all parties take the position that the action of the Court of Appeals in remanding the actions for trial on the issue of negligence under the doctrine of *res ipsa loquitur* is inconsistent with its action in directing a verdict for the defendants on the other issues. Of course, counsel for Mrs. Browder insists that a new trial should be granted on all theories of liability, while counsel for the defendants is of the opinion that a verdict should have been directed for the defendants on all theories.

■ We agree with counsel that in a products liability action in which recovery is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty, either express or implied. *See Hasson v. Ford Motor Company,* 51 Cal.App.3d 104, 123 Cal.Rptr. 798 (1975); *cf. MacPherson v. Buick Motor Company,* 217 N.Y. 382, 111 N.E. 1050 (1916). The only significant difference is that under the negligence theory the plaintiff has the additional burden of proving that the defective condition of the product was the result of negligence in the manufacturing process or that the manufacturer or seller knew or should have known of the defective condition. *Balido v. Improved Mach., Inc.,* 29 Cal.App.3d 633, 105 Cal.Rptr. 890 (1972); Keeton, *Products Liability—Some Observations about Allocation of Risks,* 64 Mich.L.Rev. 1329 (1966).

*Greco v. Bucciconi Eng. Co.,* 283 F.Supp. 978 (W.D.Pa.1967), *affirmed,* 407 F.2d 87 (3d Cir. 1969) suggests that while proof of a malfunction alone should be sufficient under the ·strict liability and warranty theories in a products liability case, a higher standard of *specificity* of proof of defect is required in order to recover under the negligence theory. Noting that the primary focus in a negligence action is defendant's conduct and duty of due care, the court concluded that "[i]t is vital to trace the injury to some *specific error in construction* or design of the machinery to determine whether" (*id.* at 982) the defect could have been avoided by exercise of reasonable care.

■ The doctrine of *res ipsa loquitur* is not a substitute for proof of defect. The correct application of the doctrine in a products liability case is set forth in *Mosier v. American Motors Corp.,* 303 F.Supp. 44 (S.D.Tex.1967), *affirmed* 414 F.2d 34 (5th Cir. 1969), as follows:

"If there is sufficient evidence of causation, *res ipsa loquitur* may be invoked to supply a reasonable inference of negligence." (*Id.* at 50).

"*When sufficient evidence has been adduced by Plaintiff to show that injury resulted from a defect in the product,* the evidence must also justify the finding that the defect was probably present when the product left Defendant's control; and such *defect* was of a nature and kind that would not ordinarily be present in the instrumentality at the time of delivery by the manufacturer in the absence of negligence." (*Id.* at 51) (emphasis added).

It follows then that if, as found by the Court of Appeals, plaintiffs failed "to prove a defect in the vehicle which rendered it unreasonably dangerous to the user," there could be no recovery under the theory of *res ipsa loquitur,* and that a verdict should have been directed for defendants on this theory of liability as it was on the others where proof of a defect in the automobile was a material element of the cause of action. Conversely, if evidence was introduced

---

**3.** Glen Gray did not file a petition for certiorari.

from which a jury reasonably could find a defect in the Mustang Mach I which proximately caused the one-car accident and resulting injuries and damages, the action of Mrs. Browder should have been submitted to the jury on the several theories plead by her, not just under the theory of *res ipsa loquitur.*

The question then is: Is there material evidence in the record to show that the automobile was defective at the time it left the control of the defendants against whom recovery is sought, and that the defective condition proximately caused the injury to plaintiffs. *See Restatement (Second) of Torts* § 402A; *Ford Motor Company v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966); *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967).

■ In reviewing the evidence introduced on trial of the actions, counsel for the parties and for the amicus curiae discuss extensively the proposition of whether a defect in a product can be proven by circumstantial evidence. The discussion was precipitated by the statement in the opinion of the Court of Appeals that a defect could not be "inferred solely from the circumstances surrounding the incident which resulted in damages to the plaintiffs." We do not interpret this statement, when read in context, to stand for the proposition that a defect in a product can never be shown by circumstantial evidence, but for the proposition that the circumstances surrounding the accident in this case were insufficient to establish a defect in the automobile. However, to clear up any possible misunderstanding, we adhere to the body of law which holds that a defect in a product, as well as any other material fact, may be proven by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *See Phillips v. Newport,* 28 Tenn.App. 187, 187 S.W.2d 965 (1945); *Elmore v. American Motors Corp.,* 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1965); *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964): W. Prosser, The Law of Torts § 103, at 671–676.

The following observations by the court in *Phillips v. Newport, supra,* outline the standard to be applied in reviewing a directed verdict in a case based on circumstantial evidence:

"Any fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. In civil cases facts are proved by a preponderance of the evidence. *If unequal conflicting probabilities, or unequal inconsistent theories are shown by the evidence; or if minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities, or inconsistent theories, are equally supported by the evidence,* the case must go to the jury. . . ." *(Id.* 287 Tenn. App. at 202, 187 S.W.2d at 971) (emphasis added).

"But in considering whether the proved facts and circumstances give equal support to the inconsistent theories of plaintiff and defendant, or whether equal probabilities exist in relation to such theories, upon a motion to direct a verdict for defendant, the court must be governed by the general fundamental rule in regard to directing verdicts, to-wit: if the minds of reasonable men must reach a conclusion adverse to plaintiff, from all the facts and circumstances shown, upon an issue which is fatal to plaintiff's cause of action, the court should hold as a matter of law that plaintiff has not made out his case, and direct a verdict for defendant." *(Id.)*

Finally, the court frames the question posed by a circumstantial case in this manner: ". . . do the proved facts and circumstances equally support the inconsistent theories of the plaintiffs and defendants . . . ?" *(Id.* at 203, 187 S.W.2d at 971). If reasonable men might differ on *this* question, the case must go to the jury.

In *Scanlon v. General Motors Corp.,* 65 N.J. 582, 326 A.2d 673 (1974), it was pointed out that:

"A product is defective if it is not fit for the ordinary purposes for which such articles are sold and used . . . [cita-

tions omitted] Establishing this element requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product. As a rule the mere occurrence of an accident is not sufficient to establish that the product was not fit for ordinary purposes. However, additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction, may be enough to satisfy the requirement that something was wrong with it. . . . [Citations omitted]. Further, a defective condition can also be proven by the testimony of an expert who has examined the product or who offers an opinion on the products design." (*Id.* at 677–78).

In these actions James Pettigrew testified the Mustang Mach I automobile involved in the accident was in the same condition when sold to the Grays as it was when he got it from Ford Motor Company. He further testified that he advertised Mustang automobiles as being good cars and that Ford Motor Company had warranted to him that the automobile was a good car and good for use on the highway.

The Grays testified that they relied on advertising by Ford Motor Company and by Pettigrew in buying the automobile. They also testified they had not had any trouble with the automobile during the two-to-three week period they had owned it, and that the automobile had not been damaged in any way before the accident of March 24, 1971.

At the time of the accident, Nancy Gray was driving the automobile and her mother, Mrs. Browder, was a passenger. Mrs. Browder was holding her infant grandchild in her lap. Both Nancy Gray and Mrs. Browder testified the steering wheel of the automobile suddenly began vibrating, that the vibration was followed immediately by a "dropping sensation," which Mrs. Gray described as being similar to driving off a curb, and that the automobile "fish-tailed" out of control so that the rear of the automobile struck a culvert which was located some five feet from the paved portion of the highway. Both Mrs. Gray and Mrs. Browder testified the front part of the automobile never left the pavement and never struck any object.

Mrs. Gray examined the automobile immediately after the accident and found, according to her, that the right front wheel was tilted sharply, but was not laying flat on the ground.

Rod Province, who repaired the automobile, testified that the right lower control arm was bent in a "V" straight down toward the ground, and the rear part of the car was damaged. He also found that the right front wheel was scratched as though it had been down on the pavement, but that the automobile was not otherwise damaged. Without objection, Mr. Province was permitted to express the opinion that the damage to the lower control arm could not have been caused by an impact without causing damage to parts of the automobile and/or assembly other than those repaired by him.

Hugh Daly, an engineer for Ford Motor Company, testified that under normal operating conditions there is some stress on the lower control arm, but that it does not support the weight of the automobile. According to Mr. Daly, "the wheel is mounted to [a] spindle and the wheel is resting on the ground and the weight is transferred up through the spindle, up through the top of the spindle to the upper control arm and up through the top of the frame at this particular point supported by the coil springs on the top side." Mr. Daly testified that he had examined the wheel assembly from the Mustang Mach I automobile and had concluded that a sideways or lateral force had been exerted to the bottom of the wheel and that it caused substantial damage to the lower control arm and front wheel, and also damage to the upper control arm, strut, and stabilizer. Mr. Daly further testified that the damage was such as would be caused if the right front wheel of the automobile was cut sharply to the left and, while cut, had struck a low concrete culvert. He also testified that he found particles of concrete in the wheel when it was inspected in the laboratory.

When the above evidence is considered in the light most favorable to the plaintiffs, as we are required to do in reviewing judgments directing verdicts for the defendants, we think the jury reasonably could find that the accident causing plaintiffs' injuries and damages was proximately caused by a defective lower support arm. There is evidence that the automobile, on the day of the accident, was in the same condition it was in when it left Ford Motor Company and when it was sold by Pettigrew to the Grays. The testimony of Mrs. Gray and Mrs. Browder negated driver negligence and improper handling or use of the automobile as possible causes of the accident, thereby creating the inference that the support arm failed under normal use and that the failure caused the accident. The inference was buttressed by the testimony of Mr. Province that the nature and extent of the damage to the automobile eliminated an external blow as a cause. The testimony of the expert, Mr. Daly, though persuasive, did no more than raise the contradictory inference that the accident caused the damage to the lower support arm which plaintiffs' testimony suggests was defective before the accident. A contradiction which, under the rules, must be resolved by the jury.

Accordingly, the judgment of the Court of Appeals reversing the trial court and remanding for trial the actions brought by Mrs. Browder and Glen Gray under the doctrine of *res ipsa loquitur* is sustained. The judgment of the Court of Appeals sustaining directed verdicts for defendants and against Mrs. Browder on the issues of strict liability, warranty and misrepresentation— being based on the erroneous proposition that there was no proof of a defect in the automobile when it left the control of the defendant, which proximately caused the action,—is reversed and remanded for new trial. Costs of the appeal are adjudged against the defendants, James Pettigrew, d/b/a Pettigrew Motor Company, and Ford Motor Company.

FONES, HENRY, BROCK and HARBISON, JJ., concur.