Jimmie **MOTLEY** and husband, George **Motley, Plaintiffs-Appellants,**

v.

**FLUID POWER OF MEMPHIS, INC. and Clippard Instrument Laboratory, Inc., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 25, 1982.

Rehearing Denied March 29, 1982.

Application for Permission to Appeal Denied by Supreme Court Oct. 12, 1982.

Sidney W. Gilreath, Knoxville, Charles S. Kelly, Dyersburg, for plaintiffs-appellants.

Michael C. Williams and Martin W. Brown, Memphis, for Fluid Power of Memphis, Inc.

Ralph W. Farmer, Dyersburg, for Clippard Instrument Laboratory, Inc.

MATHERNE, Judge.

While working at her employment in a manufacturing plant of Salant & Salant (Salant) at Union City, Tennessee, the plaintiff Jimmie Motley received serious injuries when the head of a clothing press

which she was operating closed down and caught her hands and arms. In this lawsuit for damages, she and her husband sue Fluid Power of Memphis, Inc. (Fluid Power), the seller of the control mechanism installed on the press, and Clippard Instrument Laboratory, Inc. (Clippard), the designer of the control system. The lawsuit is brought under the theories of strict liability in tort, negligence and breach of warranties.

At the close of the plaintiffs' proof, the trial judge directed a verdict in favor of both defendants. The plaintiffs appeal under the following issue for review:

In a products liability case grounded on strict liability and breach of warranty against the designers and sellers of a clothing press control system and the manufacturer of its components, should the court have directed a verdict for the defendants because the plaintiffs were unable to prove a specific defect in a particular part where the evidence showed that the injury must have been caused by some defect in said system or its components.

## I. Background

The press involved was a New York clothing press with a head pressure of between 2,000 and 2,500 pounds and a steam temperature of about 320 degrees Fahrenheit. As originally designed the press was operated by a foot pedal which closed the head down and a handle which locked it down. Obviously, when operated with the factory-installed controls, it was possible for an operator to be injured should his hands not be clear of the pressing surface when the head came down.

It was determined that the press, when operated with the factory-installed controls, did not meet O.S.H.A. standards and regulations, and Salant contacted Fluid Power for a control system which would meet those regulations. As result, Fluid Power recommended the installation of a two-hand, anti-tie-down control system on each press. This control system was designed by Clippard to require that two buttons be pressed simultaneously, one with each hand, to cause the head to come down and to preclude press operation by the pushing of one button. This control system had been installed on Mrs. Motley's press for about three months before her injury.

Mr. Bullwinkle, the official of Salant who approved the purchase of the control system, testified that when the air pressure which pushed the head down and held it down was released, the head would be pushed up and held up by two springs, and that should both springs break the head would fall down; if only one spring broke, the head would not fall all the way down. He also testified that the only other way the head would come down would be for the casting to break, which would occur only when the head was already down and under pressure. He testified that he examined Mrs. Motley's press after the accident and none of those mechanical malfunctions existed. A fellow employee, Maggie Alexander, testified that she looked at the press immediately after the accident and that the springs that held up the head were not broken and the head was not cracked. The plaintiff, Jimmie Motley, testified that she was placing a pair of pants in the press when the head suddenly slammed down on her hands; she had not pushed the two buttons to activate the movement of the head.

Before the control systems were purchased by Salant, the representative of Fluid Power, Ray Clapp, wrote Salant a letter dated January 23, 1973, recommending it purchase the two-hand, anti-tie-down control system, and stated:

(1) ... This circuit is designed so that if any part fails the press will not operate. (2) To operate, one must push both buttons simultaneously and hold them until the press is fully down and locked. The press circuit will then hold until the timer opens it.

Enclosed in that letter was a letter from Clippard to Fluid Power which stated that the control system it proposed to furnish Fluid Power for Salant met the following requirements:

1. Both buttons must be pushed to operate the machine.

2. They must be pushed within milliseconds of each other or almost simultaneous.

This insures that one of the operator's hands will be on each button when the machine operates.

Mr. Bullwinkle of Salant testified that he relied upon these representations when he purchased about 200 of these control systems from Fluid Power.

The record reveals that Mr. Clapp of Fluid Power went to each Salant plant and acquainted the head mechanics on how to install the control system on the New York presses. Apparently, the head mechanic in each plant completed the installations in his respective plant. The record does not establish improper assembly and installation of these control systems. Mr. George Mills, head mechanic of Salant, testified that absent a malfunction in the control system, the press head would not close down unless the two hand-buttons were pushed.

The defendants rely upon what the plaintiff failed to prove as possible reasons for the malfunction of the press. The defendants argue that there is no proof of a defect in any component part of the control system nor is defective design established. They further argue that the proof establishes that Salant followed a haphazard maintenance program of its equipment, particularly as to proper cleaning of the filters on the control system. They argue that there was no testimony negating the possibility that a certain diaphragm valve on the New York press may have malfunctioned, causing the press head to close down. They further argue that there was no proof negating the fact that certain timers on the New York press may have malfunctioned by not properly "bleeding" the air pressure from the press.

The trial judge directed a verdict against the plaintiffs, dismissing their cause of action on each ground alleged in the complaint. The basis of the trial judge's decision was that the plaintiffs failed to prove a defect in the control system which could have been the proximate cause of the malfunction of the press.

## II. *The Strict Liability in Tort Issue*

■ Admittedly, there is no direct proof of a defect in the control system under consideration. However, in a lawsuit based upon the theory of strict liability in tort, a defect in a product may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Browder v. Pettigrew,* (Tenn. 1976) 541 S.W.2d 402; *Young v. Reliance Electric Company,* (Tenn.App.1979) 584 S.W.2d 663. Where a plaintiff is dependent upon circumstantial evidence, it is sufficient if he makes out the more probable hypothesis, and the evidence need not arise to that degree of certainty which would exclude every other reasonable conclusion. *Chisholm v. Bohannon,* (Tenn.App.1977) 558 S.W.2d 446, citing *Bryan v. Aetna Life Ins. Co.,* (1939) 174 Tenn. 602, 130 S.W.2d 85; *Browder v. Pettigrew, supra.*

The *Browder* court quoted with approval from *Scanlon v. General Motors Corp.,* 65 N.J. 582, 326 A.2d 673 (1974), as follows:

A product is defective if it is not fit for the ordinary purposes for which such articles are sold and used. . . . [citations omitted] Establishing this element requires only proof, in a general sense and as understood by a layman, that 'something is wrong' with the product. As a rule the mere occurrence of an accident is not sufficient to establish that the product was not fit for ordinary purposes. However, additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction, may be enough to satisfy the requirement that something is wrong with it . . . [citations omitted]. Further, a defective condition can also be proven by the testimony of an expert who has examined the product or who offers an opinion on the product's design.

■ There was ample material evidence before the jury from which that body could have found that the control system on Mrs. Motley's press malfunctioned and caused the press head to slam down on her hands

and arms. The evidence establishes that Mrs. Motley's hands were not on the two push buttons, but were in the press. There is material evidence from which the jury could conclude that absent a malfunction in the control system, the press head would not come down unless the two control buttons were pushed simultaneously. From the totality of all the evidence and the circumstance proved, the jury could have found the foregoing hypothesis sufficiently established so as to reject or overcome the various probabilities advanced by the defendants.

Applying the well established rule which gives to the plaintiff every advantage the evidence offers when faced with a motion for a directed verdict and applying the rules of law heretofore stated, we hold that the trial judge erred in directing a verdict for the defendants and in dismissing the plaintiffs' cause of action based upon the theory of strict liability in tort.

### III. *The Warranty Issue*

■ The record reveals that Salant did not have the "in house" expertise to design and install a control system which would meet O.S.H.A. standards. Salant relied upon Fluid Power for this expertise, and purchased the control systems based upon representation made by Fluid Power and Clippard. The letters sent to Salant, as heretofore noted, were made for the purpose of inducing a sale of the control systems to Salant. The representations became a part of the basis of the bargain so as to create express warranties that the control systems would conform to such representations. T.C.A. § 47–2–313; *Cooper Paintings & Coatings, Inc. v. SCM Corp.,* (1970) 62 Tenn.App. 13, 457 S.W.2d 864. And, where these representations were first made by Clippard to Fluid Power and later by Fluid Power to Salant, both the supplier Clippard and the seller Fluid Power are liable for breach of express warranties where the product fails to conform to the representations made. *Agricultural Servs. Ass'n. v. Ferry-Morse Seed Co.,* 551 F.2d 1057 (6th Cir.1977).

■ In that Salant relied upon Clippard and Fluid Power to design, select and furnish it with a control system for a particular purpose, we also hold that upon the control system failing in that respect Clippard and Fluid Power would be guilty of breach of implied warranty that the control system designed and sold was fit for such purpose. T.C.A. § 47–2–315; *Fiddler's Inn, Inc. v. Andrews Distributing Co.,* (Tenn. App.1980) 612 S.W.2d 166.

■■ On the issue of proof of defect as relates to an action based upon the breach of express and implied warranties, such proof may also consist of direct evidence, circumstantial evidence, or a combination of the two. *Browder v. Pettigrew, supra.* It has been held that a much lesser burden of proof of defect is required when suit is brought for breach of warranty than when brought under the theory of strict liability. *Leach v. Wiles,* (1968) 58 Tenn.App. 286, 429 S.W.2d 823. We adopt the reasoning of the Pennsylvania Superior Court in *MacDougall v. Ford Motor Company,* (1969) 214 Pa.Super. 384, 257 A.2d 676, wherein the court stated:

> Proof of the specific defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty. "When machinery 'malfunctions', it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty, the 'sin' is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery." [citations omitted]

There was before the jury material evidence which, when viewed most favorably to the plaintiff, could be the basis of a cause of action under the theories of breach of warranties. We hold that the trial judge erred in directing a verdict for the defendants and in dismissing the plaintiffs' lawsuit based upon breach of express and implied warranties.

■ Some argument is made concerning lack of privity in these lawsuits. We note that T.C.A. § 29–34–104 provides:

Privity not required.—In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action. [Acts 1972 (Adj. S.), ch. 670, § 1; T.C.A., § 23–3004.]

This 1972 statute eliminates the requirement of "vertical" privity in lawsuits covered by the act. *Commercial Truck & Trailer Sales, Inc. v. McCampbell,* (Tenn.1979) 580 S.W.2d 765.

### IV. *Conclusions*

For the reasons stated, we hold that directed verdicts were wrongfully granted against the plaintiffs' causes of action based upon strict liability in tort and breach of express and implied warranties. The judgment of the trial court dismissing those causes of action is reversed, and those causes of action are remanded to the trial court for a new trial.

The cost in this court is adjudged against the defendants-appellees, equally, for which execution may issue, if necessary.

NEARN, J. and McLEMORE, Special Judge, concur.

### ON PETITIONS TO REHEAR

MATHERNE, Judge.

The Petitions to Rehear filed by the appellees Clippard Instrument Laboratory, Inc. and Fluid Power of Memphis, Inc. are denied at the cost of the petitioners.

NEARN, J., and McLEMORE, Special Judge, concur.