RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KING BRADLEY, JR. and CHRISTIE BRADLEY,

*Plaintiffs-Appellants,*

v.

AMERISTEP, INC. and PRIMAL VANTAGE CO., INC.,

*Defendants-Appellees.*

No. 14-6087

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:12-cv-01196—J. Daniel Breen, Chief District Judge.

Argued: April 22, 2015

Decided and Filed: August 24, 2015

Before: SILER, MOORE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Timothy W. Monsees, MONSEES & MAYER, P.C., Kansas City, Missouri, for Appellants. Milton S. Karfis, CLARK HILL PLC, Detroit, Michigan, for Appellees. **ON BRIEF:** Timothy W. Monsees, Andrew LeRoy, MONSEES & MAYER, P.C., Kansas City, Missouri, for Appellants. Milton S. Karfis, CLARK HILL PLC, Detroit, Michigan, for Appellees.

_____

**OPINION**

_____

SILER, Circuit Judge. Plaintiffs King Bradley, Jr. ("Bradley") and Christine Bradley ("Christine") appeal the district court's grant of summary judgment in favor of defendants

Ameristep, Inc. and Primal Vantage Co., Inc. on this product liability suit in diversity. For the reasons stated below, we reverse and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this action, taken in the light most favorable to the plaintiffs as the non-moving party, are as follows. Bradley purchased two replacement treestand ratchet straps ("ratchet straps") in 2007 or 2008. The ratchet straps were manufactured by defendant Ameristep, Inc., and distributed by defendant Primal Vantage Co., Inc. Bradley used the ratchet straps exclusively in conjunction with a hunting treestand that he already owned. In 2008, Bradley used the ratchet straps to secure his treestand from early September to mid-October. During that time the ratchet straps were exposed to the elements. From late 2008 to mid-2011, Bradley stored the treestand and the ratchet straps in his garage. Bradley set up the treestand again in late May or early June 2011 after inspecting the ratchet straps. He did not attempt to use the treestand again until September 29, 2011. On that date, he visually inspected the treestand and the ratchet straps before climbing into the stand. Within a few minutes of Bradley's ascent into the stand, the ratchet straps broke, causing Bradley to fall to the ground and sustain injuries.

Bradley and his wife, Christine, filed suit in 2012 for damages caused by the fall. Their complaint presents state-law claims against the defendants for strict product liability (a product defect claim), negligent design and manufacture (a product defect claim), strict liability failure to warn, negligent failure to warn, loss of consortium, and violations of the Tennessee Consumer Protection Act.

The district court granted the defendants' motions to exclude the testimony of two experts, Charles Powell and Alan Davison, retained by the plaintiffs in connection with the product defect claims.[1] Powell would have testified that the defendants failed to include an ultraviolet light inhibitor in the ratchet straps that would have reduced the rate of polymer degradation due to sunlight exposure. Powell would have also testified that the defendants failed to warn and instruct consumers how to recognize when the ratchet straps were no longer safe for

---

[1]The plaintiffs do not challenge the district court's decision to exclude Davison's testimony on the product defect claims. The district court did not reach the issue of whether to exclude Powell's and Davison's opinions as to the failure-to-warn claims because the district court dismissed those claims on other grounds.

use. The district court excluded Powell's testimony because it determined that his expertise was in metallurgy and that Powell's "experience with the webbing material at issue . . . is, according to the evidence presented, sparse." The district court's decision was influenced by a previous decision in which another district court had excluded Powell's testimony in a nearly identical lawsuit involving the same product. *See Freeland v. Ameristep, Inc.*, No. 13-cv-08-JHP, 2014 WL 1646948 (E.D. Okla. Apr. 24, 2014).

Davison would have testified that the ratchet straps were defective at the time of purchase because they failed to warn of the risks associated with decay of the polypropylene material in the straps. He also would have testified that the defendants failed to recognize the foreseeable use of the ratchet straps and accordingly failed to identify hazards and mitigate risks. Finally, Davison would have testified that the limited warnings provided by the defendants failed to comply with the relevant industry standards. The district court excluded Davison's testimony because it concluded that, "There is no evidence that he possesses any expertise . . . in the use of polymers or the design of the products at issue." Having excluded these two experts, the district court concluded that there was no evidence to support the plaintiffs' claims for strict product liability or negligent design and manufacture and granted the defendants' motion for summary judgment on those claims.

Next, the district court addressed the claims alleging a failure to provide an adequate warning. The court concluded that, notwithstanding any failure of the defendants, Bradley was aware of the dangers of exposing ratchet straps to the elements and then using them to secure a tree stand. The court also faulted Bradley for not proffering an adequate alternative warning. Finally, the court rejected Bradley's argument that defendants should have warned users to use a safety harness, because it determined that Bradley would not have heeded such a warning in the first place. For these reasons, the district court granted the defendants' motion for summary judgment on the failure-to-warn claims. Having dismissed all the other claims that might provide a basis for liability, the district court then dismissed Christine's claim for loss of consortium.

On appeal, Bradley challenges the district court's refusal to qualify Powell as an expert witness for the product defect claims, the district court's refusal to apply Tennessee's consumer

expectation test to the product defect claims, and the dismissal of the failure-to-warn claims and the loss-of-consortium claim.

## DISCUSSION

### I. The District Court's Assessment of Powell's Qualifications

In determining whether a witness is qualified to provide expert testimony, a district court must apply Fed. R. Evid. 702. *United States v. Freeman*, 730 F.3d 590, 600 (6th Cir. 2013). Rule 702 permits a witness to testify as an expert if his

> (a) . . . scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) . . . testimony is based on sufficient facts or data; (c) . . . testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id*. at 599–600 (quoting Fed. R. Evid. 702). We interpret this rule as imposing a threshold requirement of qualification by "knowledge, skill, experience, training or education," coupled with a two-part test for relevance (i.e., will the testimony "help the trier of fact to understand the evidence or to determine a fact in issue") and reliability. *See United States v. Cunningham*, 679 F.3d 355, 379–80 (6th Cir. 2012). We apply an abuse-of-discretion standard when reviewing a district court's decision to exclude expert testimony. *Id*. at 377.

This appeal implicates the threshold requirement that an expert be qualified. Although a witness is not a qualified expert simply because he self-identifies as such, we take a liberal view of what "knowledge, skill, experience, training, or education" is sufficient to satisfy the requirement. *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *Cunningham*, 679 F.3d at 379.

Powell's qualifications contain numerous general attestations of expertise in materials analysis. The district court seized on Powell's more specific references to metallurgical expertise as the foundation for a negative inference that Powell did not possess the necessary qualifications as to other types of material analysis, including polypropylene polymers. But Powell's credentials clearly mark him as an expert in materials failure analysis—not merely an

"engineer," as the district court described him. Powell has over thirty-five years of experience analyzing the forces and conditions that lead to product failures. He has served as an instructor in materials analysis and microscopic analysis for university students, professional organizations, and state agencies. In the course of his career, Powell has conducted materials failure analysis on "all types of polymer materials," and on five or six occasions he has specifically analyzed failures of polymer straps or webbing in "load-bearing applications." In light of this experience, it was an abuse of discretion for the district court to conclude that Powell's expertise was solely in the area of metallurgy and then rely on that conclusion to rule that Powell was unqualified to provide expert testimony about the ratchet straps.

## II. The District Court's Dismissal of Bradley's Product Defect Claims

Having excluded both of the experts from testifying about the alleged product defects in the ratchet straps, the district court concluded that, "Absent the testimony of [plaintiffs'] experts . . . there is simply no evidence to support their [product defect] claim." It cited one of our previous decisions for the proposition that "without admissible expert testimony on causation and product defect, no reasonable jury could find for plaintiff because, under Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects." *See Pride*, 218 F.3d at 580–81.

Because the district court abused its discretion in ruling that Powell was unqualified, its dismissal of the product defect claims must be reversed. But the district court's account of the controlling Tennessee law on the necessity of expert testimony was also erroneous, and this error provides a separate and independent ground for reversal.

In *Pride*, a plaintiff argued that a defectively designed cigarette lighter started a fire that killed her husband. 218 F.3d at 579–80. This court ruled that, "Pride's experts failed timely to present admissible evidence either that the lighter was the proximate cause of Mr. Pride's injuries, or that the presence of a snuffer cap or other redundant safety device could have prevented the accident." *Id*. at 580. We went on to say that, "Because Pride failed to introduce admissible evidence that the lighter caused the fire that killed Mr. Pride . . . the district court properly determined that BIC was entitled to summary judgment on both the manufacturing and design defect claims raised in Pride's complaint." *Id*.

This reasoning—that Pride's claim failed as a matter of law because she had no admissible evidence of causation—was sufficient to decide that case. However, we also explained that "under Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects." *Id.* (citing *Fulton v. Pfizer Hosp. Prods. Grp., Inc.*, 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993), and *Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn. 1976)). Setting aside the fact that this statement is arguably dicta and therefore not binding precedent, it is not clear that this is an accurate statement of Tennessee law. While both of the Tennessee cases cited by *Pride* refer to the need to "trace the injury to some specific error in construction or design of the product," *Fulton*, 872 S.W.2d at 912 (alteration marks omitted) (quoting *Browder*, 541 S.W.2d at 404), neither case requires that specific error to be identified by expert testimony.[2] Subsequent language in *Browder* cuts against the notion that a successful products liability claim requires expert testimony:

> A product is defective if it is not fit for the ordinary purposes for which such articles are sold and used . . . . Establishing this element requires only proof, in a general sense and as understood by a layman, that "something was wrong" with the product. As a rule the mere occurrence of an accident is not sufficient to establish that the product was not fit for ordinary purposes. However, additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction, may be enough to satisfy the requirement that something was wrong with it . . . . Further, a defective condition can also be proven by the testimony of an expert who has examined the product or who offers an opinion on the products design.

541 S.W.2d at 405–06 (quoting *Scanlon v. Gen. Motors Corp.*, 326 A.2d 673, 677–78 (N.J. 1974)). The implication of the above passage is that, contrary to the dicta in *Pride* which purported to rely on *Browder*, expert testimony is not the only way to prove a claim that a consumer product was defectively designed or manufactured.

The persuasiveness and authority of *Pride* is also undermined by the Tennessee Supreme Court's subsequent decision in *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800 (Tenn. 2001). In that case, this court certified the following question to the Tennessee Supreme Court: "In a

---

[2]Arguably, *Fulton* also took an improperly broad view of *Browder*, which "suggests that while proof of a malfunction alone should be sufficient under the strict liability and warranty theories in a products liability case, a higher standard of Specificity[sic] of proof of defect is required in order to recover under the negligence theory." *Browder*, 541 S.W.2d at 404. In quoting *Browder*, *Fulton* did not recognize any difference between the various theories of product liability.

products liability action under Tennessee law, may the plaintiff use the 'consumer expectation test' to prove that his seatbelt/restraint system was unreasonably dangerous because it failed to conform to the safety standards expected by an ordinary consumer under the circumstances?" *Id.* at 803. *Jackson* ruled that "the consumer expectation test is applicable to any products liability case in which a party seeks to establish that a product is unreasonably dangerous under Tennessee law." *Id.* at 806. The opinion went on to "affirm . . . that the consumer expectation test and the prudent manufacturer test are not exclusive of one another and therefore either or both of these tests are applicable to cases where the product is alleged to be unreasonably dangerous." *Id.*

"Under the consumer expectation test, a plaintiff is required to produce evidence of the objective conditions of the product as to which the jury is to employ its own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." *Id.* at 805–06 (internal quotation marks omitted). In this action, the district court did not directly address the applicable consumer expectation test. Instead, the district court proceeded on the assumption that Bradley could prevail on his product defect claims only if he proved that his injury was caused by a failure to include certain chemical additives in the composition of the ratchet straps. But under the consumer expectation test, Bradley could prevail if he persuaded a jury that the ordinary consumer would not expect ratchet straps to catastrophically fail after only a few months of exposure to the elements. That theory of liability would not require either evidence about chemical additives or any other form of expert testimony. Indeed, if the dicta in *Pride* about the necessity of expert testimony were to be taken at face value, the end result would be to strip the jury of the ability to use its own judgment about ordinary expectations and thereby effectively nullify the consumer expectation test in its entirety.

The defendants argue that, "The consumer expectation test cannot be relied upon because polypropylene chemical composition and breakdown is beyond the common knowledge of the ordinary consumer." While it is true that the ordinary consumer may not understand the precise properties of the chemicals involved or the precise rate of deterioration that might occur over time, it is quite reasonable to believe that the ordinary consumer has enough experience with polypropylene straps, tie-downs, or webbing to have some expectation as to the lifespan of those

products when exposed to the elements. A ratchet strap is a simple device, and in this action there is no question that the catastrophic failure of the ratchet straps was the proximate cause of Bradley's injuries. Thus, notwithstanding the defendants' attempt to confuse the issue by emphasizing the "complexity" of a treestand's "comprehensive climbing system," the obvious failure of a simple component is a suitable candidate for assessment under the consumer expectation test. Therefore, the district court committed an additional error by not allowing Bradley to proceed under the consumer expectation test and rely on lay testimony about the objective facts and circumstances surrounding the ratchet straps' failure.

### III. The District Court's Dismissal of Bradley's Failure-to-Warn Claims

The district court also dismissed the claims that the defendants failed to provide adequate warnings about the ratchet straps and failed to convey the extent of the danger involved with use of the ratchet straps to secure a treestand. "Under Tennessee law, a manufacturer must warn users about non-obvious dangers caused by its product." *Rodriguez v. Stryker Corp.*, 680 F.3d 568, 570 (6th Cir. 2012). "A reasonable warning not only conveys a fair indication of the dangers involved, but also warns with the degree of intensity required by the nature of the risk." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn. 1994). The Tennessee Supreme Court has identified an inclusive list of criteria for identifying an adequate warning: 1) the warning must adequately indicate the scope of the danger; 2) the warning must reasonably communicate the extent or seriousness of the harm that could result from misuse of the product; 3) the physical aspects of the warning must be adequate to alert a reasonably prudent person to the danger; 4) a simple directive warning may be inadequate when it fails to indicate the consequences that might result from a failure to follow it; and 5) the means to convey the warning must be adequate. *Barnes v. Kerr Corp.*, 418 F.3d 583, 590 (6th Cir. 2005) (citing *Pittman*, 890 S.W.2d at 429).

"An action based on an inadequate warning requires not only that the warning itself be defective, but that the plaintiff establish that the product is unreasonably dangerous by reason of defective warning and that the inadequate labelling proximately caused the claimed injury." *Id*. (internal quotation marks and alteration marks omitted). "Generally, a manufacturer will be absolved of liability for failure to warn for lack of causation where the consumer was already aware of the danger, because the failure to warn cannot be the proximate cause of the user's

injury if the user had actual knowledge of the hazards in question." *Harden v. Danek Med., Inc.*, 985 S.W.2d 449, 451 (Tenn. Ct. App. 1998) (internal quotation marks omitted).

Bradley argues that there are genuine issues of material fact surrounding the adequacy of the warnings included with the ratchet strap. The district court ruled that there were no issues of material fact after a two-step analysis. At the first step, it found that, regardless of whether the product warnings adequately apprised the user of the dangers of leaving the product exposed to the elements and the risk of injury associated with failure to properly store the straps, Bradley had actual knowledge of those dangers and risks. At the second step, the district court rejected Bradley's arguments that the warnings were inadequate for failure to provide an expiration date for the straps or describe how the straps should be inspected. The district court faulted Bradley for not proffering an alternative warning with an appropriate expiration date and descriptions of various types of damage that could occur to the ratchet straps. Bradley challenges both steps in the district court's analysis.[3]

At the first step, it appears that the district court's findings are well-grounded. Bradley repeatedly acknowledged that it was better to avoid exposing the ratchet straps to the elements for "long periods of time" in order to avoid their deterioration. And Bradley's established routine of physically examining various aspects of the straps at regular intervals clearly indicates his awareness and understanding of the risks associated with a potential failure of the straps and the need to avoid such failures.

Bradley's awareness and understanding of the risks, however, did not extend to knowledge of how to effectively avoid or minimize those risks. As the plaintiffs point out, the simple directives admonishing the user, "**DO NOT** leave Ratchet Strap out in sunlight or other weather when not in use," and "**DO NOT** leave the ratchet outside all year round. It must be stored inside when not in use," rely on an ambiguous term. In those directives, "use" could be reasonably interpreted to mean "use of the ratchet straps to secure the treestand to a tree," or "use of the ratchet straps in conjunction with the treestand to actively engage in hunting." By setting up the treestand weeks before he climbed into it, Bradley was "using" the ratchet straps under the

---

[3]The district court also rejected Bradley's separate argument that the defendants failed to provide a proper warning about the need to wear a safety harness while in the stand. Bradley has not appealed that ruling.

former interpretation (and therefore not violating the directives in the product warnings) but not "using" the straps under the latter interpretation.

Furthermore, while Bradley was able to intuit that prolonged exposure of the ratchet straps to the elements could degrade the integrity of the straps, he received no guidance on how quickly those straps could deteriorate or how signs of deterioration might manifest themselves. The lack of information regarding how long the straps can be exposed, the inspection criteria for determining if the straps have been exposed for too long, or any other method to allow the user to determine, prior to each use, whether the straps are safe presents a material issue of fact as to whether the warnings were adequate. This is particularly true when, as noted above, even the simple directive to avoid exposure to the elements contains a latent ambiguity.

The district court attempted to sidestep this problem by focusing on the failure of Bradley's experts "to indicate what the expiration date should have been or how the warnings could have described every type of damage, whether from sunlight, water, freezing, temperature fluctuations or animal contact, and exactly how the straps would look after each type of damage at the point at which they were no longer safe to use." In *Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005), this court ruled that it was not an abuse of discretion for a district court to hold that a "failure to propose alternative warnings subject to empirical testing rendered [an expert's] testimony [on a failure-to-warn claim] unreliable and irrelevant to the trier of fact."

The shortcomings in the expert testimony, however, are not fatal to Bradley's claim. In *Brown*, we agreed with the district court that the product at issue was "a complex machine beyond the purview of the ordinary consumer . . . whose safety is best evaluated using the prudent-manufacturer test—a test under which expert testimony is required in order to reach the jury." *Id.* at 646–47. But since we have determined that the consumer expectation test can be applied to the treestand ratchet straps in this case, Bradley was entitled to have a jury employ its own sense of whether the relevant warnings provided the ordinary consumer with knowledge of how to effectively avoid or minimize the risks associated with the treestand ratchet straps. *See Jackson*, 60 S.W.3d at 805–06. Therefore, the district court erred by assuming that the absence of relevant expert testimony triggered dismissal of the failure-to-warn claims.

## IV. The District Court's Dismissal of Christine's Loss-of-Consortium Claim

The district court's dismissal of Christine's loss-of-consortium claim was predicated on the dismissal of both the product defect and the failure-to-warn claims. There being no other grounds in the record to support the dismissal of this claim, *cf. United States v. Phillips*, 752 F.3d 1047, 1049 (6th Cir. 2014), we reverse this decision by the district court.

## CONCLUSION

For the reasons stated above, we REVERSE the court's grant of summary judgment to the defendants and REMAND for further proceedings consistent with this opinion.