NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0010n.06

No. 15-4101

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 05, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DOREEN SMITH, As Administrator of the Estate of Kenneth C. Smith, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| ROGER JONES, Ptl Badge No. 51, Individually and In His Official Capacity, | ) ) ) | NORTHERN DISTRICT OF OHIO |
| Defendant-Appellant. | ) ) | |

Before: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Officer Roger Jones fatally shot Kenneth Smith, who was then age 20. A jury awarded Smith's estate $5,500,000, which the district court reduced to $4,000,000. Jones appeals, arguing, among other things, that Smith's claims are time-barred and that the district court made various errors during the trial. We reject his arguments and affirm.

I.

In the early morning of March 10, 2012, Jones, a police officer, was off-duty in a parking lot in downtown Cleveland. He saw a fight break out and one man shoot a gun into the air. Three men fled in a gold Saturn, with the shooter in the driver's seat, Smith in the passenger's seat, and a third man in the back seat. Jones ran after them. Eventually police cars blocked the Saturn at a nearby intersection. Three uniformed officers approached the driver's side with their

guns drawn. Jones, wearing a Cleveland Indians jacket, approached the passenger's side, likewise with his gun drawn. Jones yelled at Smith to put his hands up, but Smith did not respond. Jones then kicked in the front passenger's side window.

The parties dispute what happened next. According to Jones, Smith refused to put up his hands. Jones tried to pull Smith out of the car, but Smith resisted. Jones noticed a gun in the Saturn's center console and saw Smith's right arm move towards the gun. Jones feared that Smith was reaching for the gun, so Jones fired a single shot into the back of Smith's head. Smith then stumbled the rest of the way out of the Saturn before falling to the pavement. In contrast, Kayla Hodge and Alexis McCray—who were in a different car at the same intersection—say that Jones pulled Smith all the way out of the Saturn, at which point Smith put his hands up and began to kneel on the pavement, per Jones's instructions. Then Jones put his gun to the back of Smith's head and pulled the trigger. Smith immediately collapsed onto the pavement. Either way, Smith was still alive when the paramedics arrived. They tended to him for several minutes before taking him to a hospital, where he was pronounced dead.

Police investigators later found the cartridge from Jones's gun in a pool of blood on the pavement near where Smith had fallen. They did not find any of Smith's blood in the Saturn. Ultimately investigators cleared Jones of any criminal wrongdoing.

Almost a year later, Kenneth Smith's mother, Shauna Smith, filed wrongful-death and survivorship claims against Jones on behalf of Smith's estate. In Ohio, only the estate's administrator may pursue claims on behalf of the estate. *See* Ohio Rev. Code Ann. § 2125.02(A)(1); *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1261 (Ohio 2007). Although Shauna Smith had applied to be the administrator of Smith's estate by the time she filed the lawsuit, the Ohio probate court ultimately named Doreen Smith, Kenneth Smith's

grandmother, the administrator. Thirteen months after Shauna Smith filed the suit against Jones—and after Ohio's applicable two-year statute of limitations had expired—Jones moved to dismiss the suit for lack of standing because Shauna Smith was not the administrator. *See* Ohio Rev. Code Ann. §§ 2125.02(D), 2305.10(A). Shauna Smith moved for leave to amend the complaint to name Doreen Smith as the plaintiff. The district court granted her motion and held that the amended complaint was timely because the amendment related back to the complaint's original filing date.

The case thereafter went to trial, where after four days the jury returned a verdict in favor of Smith, and awarded damages of $5,500,000. Jones moved for judgment as a matter of law or for a new trial, which the district court denied. Jones also moved to reduce the damages award; the court granted that motion in part and reduced the award to $4,000,000. Jones now appeals.

## II.

### A.

Jones first challenges the district court's holding that Smith's amendment related back to the original complaint's filing date. We review that holding de novo. *See Durand v. Hanover Ins. Group, Inc.*, 806 F.3d 367, 374 (6th Cir. 2015). The amendment related back if it merely corrected a "misnomer or misdescription" of a party already in court and if the defendant already had notice of the plaintiff's claims. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318-19 (6th Cir. 2010). That test is met here: the amendment merely changed the first name of the estate's administrator and changed nothing as to the estate's claims. And Shauna Smith's decision to list herself as administrator (in the initial complaint) was by all appearances an honest mistake, since at the time she thought she would be named the administrator. Jones's argument is therefore meritless and the amended complaint was timely.

B.

Jones's next argument concerns his attempt to use a peremptory strike against "Juror Five," an African-American woman who in fact served on the jury at trial. Smith challenged the strike during voir dire, arguing that Jones had struck the juror because of her race. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Jones's lawyer said he had struck Juror Five because she (like Smith's mother) had lost an adult child. The district court found that reason not credible for three reasons, namely Juror Five's son was 44 (much older than Kenneth Smith) when he died; Jones did not ask Juror Five any questions about her potential bias; and nothing Juror Five said during voir dire suggested that she would be biased. *See Paschal v. Flagstar Bank*, 295 F.3d 565, 574-76 (6th Cir. 2002). The court thus upheld Smith's *Batson* challenge and allowed Juror Five to serve on the jury.

Jones now argues that his reason was credible because the district court had already found cause to dismiss another juror who had lost a child. We defer to the district court's credibility determination absent "exceptional circumstances[.]" *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). Here, the dismissed juror had lost a young daughter due to medical negligence, and he told the court that he would have difficulty sitting through a trial involving another parent who had lost a child. We see no reason why the court's decision to dismiss that juror would necessarily lend credibility to Jones's reason for rejecting Juror Five, in part because Juror Five did not say that she too would have difficulty sitting through the trial. Moreover, Jones's lawyer failed to question Juror Five about the death of her adult son, which gave the court some grounds to doubt his purported reason. *See Paschal*, 295 F.3d at 576. We therefore defer to the district court's resolution of this issue.

C.

Jones also challenges three of the district court's evidentiary rulings, which we review for an abuse of discretion. *See Pride v. BIC Corp.*, 218 F.3d 566, 575 (6th Cir. 2000).

First, Jones argues that the court should have excluded the testimony from Smith's forensic expert, David Balash. He opined that the crime-scene forensics—namely, the lack of blood in the Saturn, the wound pattern on Smith's head, and the location of the cartridge—supported Smith's account of the shooting. Jones moved to exclude Balash's testimony on the grounds that he was not qualified to offer it. *See generally* Fed. R. Evid. 702. Specifically, Jones contends that Balash lacked qualifications to opine about the lack of blood in the Saturn because he was not a forensic pathologist. Balash had worked in forensics for the Michigan State Police for over 25 years, however, and had spent years analyzing blood spatter. That experience was enough to qualify him on this issue. *See Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015). Jones also says the court should not have allowed Balash to testify about the angle of the gunshot, because Balash came to a different conclusion on that issue than did Dr. Joseph Felo, the medical examiner who supervised Smith's autopsy. But that difference affects Balash's credibility, not his ability to testify. *See United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994).

Jones further contends that the sole purpose of Balash's opinion was to "cast doubt on the credibility" of the police investigators, including the police officers and Felo. Experts may not testify about the credibility of other witnesses. *See Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). Jones says Balash's testimony should have been excluded because he opined in his expert report that the initial investigation of the shooting was "superficial and driven solely by Officer Jones' explanation" of the shooting. But Balash did not repeat this opinion during his

trial testimony. He did note in his testimony that the investigators had not preserved or tested certain evidence and thus that he could not include that evidence in his analysis, but he did not speculate at trial as to why the investigators had failed to do so. Hence this contention is meritless.

Next, Jones argues that the district court should have the excluded testimony from Smith's expert on police procedures, Melvin Tucker. He testified about standard police procedures at the time of the shooting and about what a reasonable officer would have done in Jones's situation. Tucker opined that, under either side's account of the shooting, Jones's actions violated generally accepted procedures. Jones says the court should have excluded Tucker's testimony because it was irrelevant to the question whether Jones's actions were constitutional. It is true, of course, that the question whether an officer's conduct violated so-called "police practices" is different from the question whether it violated the Constitution. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). But Tucker's testimony had some relation to whether a reasonable officer would have acted as Jones did, which in turn had some relation to the constitutional issue here. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Thus the district court was within its discretion to find the testimony relevant.

Jones also argues that Tucker impermissibly gave legal conclusions during his testimony—namely that Jones's actions were unconstitutional. *See* Fed. R. Evid. 704(a); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). We disagree: Tucker did not discuss the constitutionality of Jones's actions, and thus fell short of giving a legal conclusion. *See Champion*, 380 F.3d at 908-09. Hence the district court did not abuse its discretion in this respect either.

Finally, Jones argues that the court should have allowed the medical examiner, Felo, to testify about Smith's blood-alcohol level and its likely effects on Smith's decisions the night of the shooting. The district court excluded that testimony because Jones did not disclose his intention to elicit it until the first day of trial, rather than have Felo prepare a report before trial. *See* Fed. R. Civ. P. 26(a). Jones says the rule does not apply here, because Felo was a medical examiner and thus was like a treating physician, who typically is not required to prepare a report before trial. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007). But that still leaves Jones's failure to disclose his plans to call Felo as a blood-alcohol witness at all; and that failure was reason enough for the district court, in its discretion, to exclude his testimony.

### D.

Jones challenges the district court's denial of his post-verdict motion for judgment as a matter of law. We review that decision de novo. *See Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007). Jones contends his use of deadly force was objectively reasonable as a matter of law because a gun was next to Smith's elbow in the Saturn. *See id*. Suffice it to say, however, that a police officer cannot shoot a person simply because the person is near a gun.

Jones also argues that the district court should have granted his request for a new trial because, he says, the verdict was against the weight of the evidence. We disagree: Smith presented eyewitness testimony, testimony regarding crime-scene forensics, and other expert testimony that gave the jury a reasonable basis to return a verdict for Smith.

Finally, Jones argues that the district court should have reduced the damages even more than it did. As reduced by the district court, the judgment here awards $1 million for Kenneth Smith's pain before he died (*i.e.*, "survivorship" damages), $500,000 for Shauna Smith's loss of

Kenneth Smith's support, and $2.5 million for her mental anguish and loss of society. We review for an abuse of discretion the district court's approval of that award. *See Champion*, 380 F.3d at 900.

Smith presented evidence in support of each aspect of the award. The survivorship award found support from the paramedics' report, which said Kenneth Smith lived for at least seven minutes after he was shot. The award for loss of support found some basis in Kenneth Smith's young age, and in testimony regarding his fledgling musical career. And the award for his mother's anguish was amply supported by testimony from several witnesses. Thus, though the evidence in support of the award was not very strong, the district court was within its discretion to approve that amount. *See Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 726 (6th Cir. 2012); *Champion*, 380 F.3d at 905-06.

*       *       *

The district court's judgment is affirmed.