IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 14, 2017 Session

## JOYCE STOCKTON, ET AL. v. FORD MOTOR COMPANY

Appeal from the Circuit Court for Madison County
No. C-13-6    Roy B. Morgan, Jr., Judge

_____

No. W2016-01175-COA-R3-CV

_____

This is a jury case.  Automobile mechanic and his wife, Appellees, filed suit against Appellant Ford Motor Company for negligence in relation to wife's diagnosis of mesothelioma.  Appellees allege that Ford's brake products, which contained asbestos, were unreasonably dangerous or defective such that Ford owed a duty to warn Mr. Stockton so that he, in turn, could protect his wife from exposure to air-borne asbestos fibers.  The jury returned a verdict against Ford for $3.4 million.  Ford appeals.  Because the jury verdict form is defective, in that it omits two necessary questions in products liability cases, i.e., that the product at issue was unreasonably dangerous or defective and that the plaintiff's injuries were reasonably foreseeable, we vacate the judgment and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court.  D. MICHAEL SWINEY, C.J., filed a separate concurring opinion.  J. STEVEN STAFFORD, P.J., W.S., filed a separate concurring and dissenting opinion.

Stephen A. Marcum, Huntsville, Tennessee; Jonathan D. Hacker and Brad N. Garcia, pro hac vice, Washington, D.C., for the appellant, Ford Motor Company.

Harry Douglas Nichol, Knoxville, Tennessee; Jonathan Ruckdeschel, pro hac vice, Ellicott City, Maryland; Robert Shuttlesworth and Ross Stomel, pro hac vice, Houston, Texas, for the appellees, Joyce Stockton and Ronnie Stockton.

# OPINION

## I. Background

This is an appeal from a $3,400,000.00 jury verdict and judgment against Appellant Ford Motor Company ("Ford"). Ronnie Stockton began working as an automobile mechanic in 1971. In 1980, Mr. Stockton opened his own shop, Stockton Auto, where he worked on vehicles of every make and model, including vehicles manufactured by Ford. Mr. Stockton's wife, Joyce (together with Mr. Stockton, the "Stocktons," or "Appellees"), never worked directly with Ford brake products; however, she cleaned Stockton Auto twice per week and also laundered Mr. Stockton's clothing, which was exposed to asbestos dust. In 2011, Mrs. Stockton was diagnosed with mesothelioma, a lung cancer directly caused by chrysotile asbestos. It is undisputed that, in the mid-to-late 20th century, all automotive manufacturers used chrysotile asbestos in various automotive products, including brake linings and pads. When brake linings and pads are replaced, contaminant buildup (i.e., dust) must be cleaned from the brake assembly. If care is not taken to contain that dust, it can spread into the air and can be inhaled by mechanics and bystanders. Installing brake pads can require grinding the brake pads to size, which can also generate dust.

The Stocktons initially filed suit in Illinois against sixty-one companies, including Ford. The Stocktons alleged that Mrs. Stockton's mesothelioma was caused by exposure to asbestos used in the companies' products. The defendants named in the Stocktons' Illinois lawsuit were all settled or dismissed. Ford was dismissed on the ground of *forum non conveniens*. Thereafter, on January 7, 2013, the Stocktons filed suit, in the Circuit Court for Madison County, against Ford, on the theory of products liability. In relevant part, Appellees' complaint averred that:

> 5. Mrs. Stockton was secondarily and primarily exposed to asbestos-containing products and dust emanating from those products which was brought home on her husband's clothing as a result of her husband's occupation as a mechanic. Defendant Ford Motor Company or its predecessor-in-interest is, or at times material hereto, has been engaged in the processing, manufacturing, sale, installation, and distribution of asbestos or asbestos-containing products. Plaintiffs would show that Plaintiff Joyce Stockton has been exposed, on numerous occasions, to asbestos-containing products produced and sold by Defendant and, in so doing, had inhaled great quantities of asbestos fibers. Further, Plaintiff Joyce Stockton has suffered injuries proximately caused by her exposure to asbestos-containing products designed, manufactured and sold by the Defendant.

> 6. Plaintiff was exposed to asbestos-containing products that were

- 2 -

manufactured, designed, and distributed by the Defendant and their predecessors-in-interest for use in automobiles and commercial grade trucks. Plaintiffs would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products were in this defective condition at the time they were designed by or left the hands of the Defendant. Plaintiffs would show that Defendant's asbestos-containing products and requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. Plaintiffs would show that this market defect rendered such products and machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendant. Plaintiffs would show that Defendant is liable in product liability including, but not limited to, strict product liability for the above-described defects.

Based on the averments set out in their complaint, Appellees prayed for both compensatory and punitive damages.

On April 10, 2013, Ford filed its answer, wherein it denied liability and raised, as an affirmative defense, the comparative fault of the other manufacturers named in the Illinois lawsuit and the comparative fault of Mr. Stockton. Concerning Mr. Stockton's alleged negligence, Ford averred that he possessed and repeatedly received warnings that brakes and other components contained asbestos, that dust generated from those products posed risks of serious bodily harm, and that the dust should not be inhaled or swept without protection. At trial, Ford provided evidence that Mr. Stockton had received training, in 1977 and 1982, explicitly warning that breathing dust from asbestos-containing automobile products could be hazardous and that protective gloves and masks should be worn when working with these products. In addition to this training, Ford also introduced numerous shop manuals that Mr. Stockton had received during his career; these manuals contained explicit warnings about the health risks associated with asbestos in brake parts. Thus, Ford maintained that the duty to warn Mrs. Stockton fell to her husband and not to Ford, which had no employer-employee relationship with Appellees.

The case was tried to a jury over several days in August of 2015. At trial, Appellees' theory of liability was that exposure to asbestos from Ford's products caused Mrs. Stockton's mesothelioma. Appellees alleged that Ford was strictly liable for Mrs. Stockton's injuries, that Ford was negligent in the design of its products, and that Ford was negligent in failing to provide an adequate warning about the asbestos defect in its products. As to the failure to warn claim, Appellees did not argue that Ford should have warned Mrs. Stockton; rather, Appellees argued that Ford should have warned Mr. Stockton, who, in turn, would have protected Mrs. Stockton. Following deliberation, the

jury returned a verdict, on August 21, 2015, finding that Ford was negligent "in failing to adequately warn Joyce Stockton and [that] such negligence [was] a cause of Joyce Stockton's injuries and damages." The jury assigned 71% of the fault for Mrs. Stockton's injuries to Ford and 29% of the fault to another manufacturer. The jury awarded $4,192,360.52 in compensatory damages, $232,724.00 in loss of consortium damages, and $225,000.00 in punitive damages. On December 4, 2015, Ford filed a motion for judgment as a matter of law or, in the alternative, for new trial. As required by Tennessee Rule of Appellate Procedure 3(e), Ford's motion sets out all of the issues raised in this appeal. On May 9, 2016, the trial court entered an "amended final judgment on jury verdict and order on Ford Motor Company's Post-Trial Motions," wherein it denied Ford's motion for judgment as a matter of law or, in the alternative, for new trial. The May 9, 2016 order awards the Stocktons a total judgment of $3,001,868.45. Ford appeals.

## II. Issues

Ford raises the following issues for review as stated in its brief:

1. Whether Ford is entitled to a new trial because: (a) the jury instructions impermissibly allowed jurors to find Ford liable for negligent failure to warn without finding that Ford's products were defective or unreasonably dangerous; (b) the verdict form and course of deliberations preclude any inference that the jury actually found that Ford's products were defective or unreasonably dangerous; (c) the court's exclusion of plaintiffs' prior complaint was erroneous and prejudicial; and (d) no reasonable jury could have failed to apportion some amount of negligence liability to Ronnie Stockton, given his undisputed failure as an employer to follow OSHA regulations and repeated warnings about the danger of asbestos in brake dust.

2. Whether the duty under Tennessee law of an *employer* to protect the family members of *employees* from workplace asbestos-dust hazards extends beyond the employer-employee, workplace context to impose on a product manufacturer a duty of care to family members of remote, occasional handlers of its product.

3. Whether specific causation can be found where: (1) the undisputed evidence established that [Mr. Stockton] was already aware of the dangers of asbestos dust and disregarded the risks, thus precluding any inference that yet another warning from Ford would have prevented [Mrs. Stockton's] injuries; (b) plaintiffs adduced no evidence quantifying or even estimating how much asbestos dust from Ford products [Mrs. Stockton] was exposed to, leaving jurors to rely solely on an "every exposure" theory foreclosed by precedent.

- 4 -

4. Whether the punitive damages verdict must be reversed because: (a) Michigan law should govern the issue of punishment for Ford's conduct, and Michigan law bars the imposition of punitive damages; and (b) there was no evidentiary basis for concluding that Ford recklessly ignored a known risk to family members of remote, occasional handlers of its products.

We begin our review with Appellant's issue concerning the jury instructions and verdict form.

### III. Jury Instructions and Verdict Form

The Tennessee Products Liability Act of 1978 (the "Act"), Tenn. Code. Ann. § 29-28-101, *et seq*, provides that:

> [a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

The foregoing statute is modeled on the Restatement (Second) of Torts § 402A, which provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property. . . .

In ***Roysdon v. R.J. Reynolds Tobacco Co.***, the 6th Circuit Court of Appeals explained:

> Prior to the enactment of § 29-28-105, Tennessee had judicially adopted § 402A of the Restatement (Second) of Torts (1966), which requires the plaintiff to prove that the product was both defective and unreasonably dangerous. ***Ellithorpe v. Ford Motor Co.***, 503 S.W.2d 516 (Tenn.1973). However, it is clear from the plain language of the statute and its legislative history that the criteria for liability were intended to be read in the disjunctive ("or") rather than the conjunctive ("and"). ***Smith v. Detroit Marine Engineering Corp.***, 712 S.W.2d 472, 474 (Tenn.App.1985), permission denied (June 30, 1986).[1]

---

[1] In ***Smith***, the relevant Legislative history was presented as follows:

Clearly, the Tennessee legislature intended to deviate from § 402A and allow a products liability action when the product is either defective or unreasonably dangerous.

***Roysdon v. R.J. Reynolds Tobacco Co.***, 815 F.2d 80 (6th Cir. Tenn. 1989). Accordingly, whether a plaintiff's claim against a product manufacturer is couched in negligence, strict liability, or breach of warranty, Tennessee courts have held that the plaintiff must establish that the product was defective **or** unreasonably dangerous at the time the product left the control of the manufacturer. In ***Browder v. Pettigrew,*** the Tennessee Supreme Court specifically held that

> in a products liability action in which recovery is sought under the theory of negligence, the plaintiff must establish the existence of a defect in the product just as he does in an action where recovery is sought under the strict liability theory or for breach of warranty, either express or implied. The only significant difference is that under the negligence theory the plaintiff has the additional burden of proving that the defective condition of the product was the result of negligence in the manufacturing process or that the manufacturer or seller knew or should have known of the defective condition.

***Browder v. Pettigrew***, 541 S.W.2d 402, 404 (Tenn. 1976) (internal citations omitted); *accord* ***Fulton v. Pfizer Hosp. Prod. Grp., Inc.***, 872 S.W.2d 908, 911 (Tenn. Ct. App. 1993) (quoting ***Higgs v. General Motors Corp.***, 655 F. Supp. 22, 23 (E.D.Tenn.1985)) ("'[I]t makes no difference whether the complaint is couched in terms of negligence,

---

During the debate in the House of Representatives, Representative Ashford ... moved to amend the bill by deleting the word "and" between "condition and unreasonably," and substituting instead the word "or." Representative Ashford stated to the House as follows:

> Mr. Speaker, ladies and gentlemen of the House, the substitution of the word "or" for "and" allows an action to be brought for a defective condition in a product, or for an unreasonably dangerous condition in a product rather than requiring that the product be defective and unreasonably dangerous and I think probably the sponsors of the bill indicated that they approve of this type of a change which allows both a defective condition of a product that might not be unreasonably dangerous and for an unreasonably dangerous product, and I'd move adoption of the amendment.

***Smith***, . 712 S.W.2d at at 474-75.

strict liability or breach of warranty, it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of products liability, the plaintiff must establish that the product was defective [or] unreasonably dangerous at the time the product left the control of the manufacturer.'").

Before turning to review the jury instructions, we note that "[w]hether a jury instruction is erroneous is a question of law and is[,] therefore[,] subject to de novo review with no presumption of correctness." *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011). An erroneous jury instruction requires reversal when "it appears that the erroneous instruction more probably than not affected the judgment of the jury." *Id*. at 699.

As to negligence generally, the Tennessee Civil Pattern Jury Instructions ("T.P.I.") provide:

### T.P.I.—CIVIL 3.01 Determination of Whether Plaintiff Entitled to Recover a Verdict (No Issue of Comparative Fault)

A plaintiff is entitled to recover compensation for an injury that was legally caused by the negligent conduct of a defendant. In this case, the plaintiff has the burden of proving:

1. That the defendant was negligent; and

2. That the negligence was a legal cause of injury to the plaintiff.

USE NOTE
This is merely an introductory statement which one may find useful but which may be omitted where it is not needed.

COMMENT
A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. The existence of a legal duty is a question of law for the court which requires consideration of whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others." *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998).

As set out in the "use note," T.P.I. 3.01 is "merely an introductory statement;" accordingly, it may be modified depending on the nature of the lawsuit. Concerning Appellees' claim of negligence, in its proposed jury instructions, Ford asked for the

following, modified version of T.P.I. 3.01:

**T.P.I.—CIVIL 3.01**
**Determination of Whether Plaintiff**
**Entitled to Recover a Verdict**

A plaintiff is entitled to recover compensation for an injury that was legally caused by the ~~negligent~~ conduct of a defendant. In this case, the plaintiff has the burden of proving:

1. That Ford was negligent <u>in failing to warn Mrs. Stockton of the dangers associated with dust from chrysotile in Ford brakes and clutches</u>;

2. <u>That Ford's brakes and clutches were defective or unreasonably dangerous by failing to warn of the dangers associated with dust from chrysotile in Ford brakes and clutches</u>; and

3. That the negligence was a <u>cause in fact and</u> legal cause of injury to plaintiff.

NOTE: Ford submits that Plaintiffs are required to establish negligence, strict liability, cause in fact and legal cause. Tenn. Code Ann. § 29-28-105(a); *see also Fulton v. Pfizer Hosp. Prod. Grp., Inc.*, 872 S.W.2d 908, 911 n. 1 (Tenn. Ct. App. 1993) (whether cause of action is couched in terms of negligence or strict liability, plaintiff must establish that the product was defective or unreasonably dangerous).

(Emphases in original). The trial court denied Ford's proposed 3.01 instruction, stating:

THE COURT: So, let me read [jury instruction] 3 for a minute. Keep in mind the TPI just says that the negligence was a legal cause of injury to the plaintiff.

Now, that's the Tennessee Pattern Jury Instructions that's [sic] put together by the committee that consists of judges that try these cases.

So if I stick to the TPI and then know I'm following up with those other TPIs that that same committee put together, I feel like that's the safest approach.

\*\*\*

What I'm inclined to do is leave 3.01 over defendant's objection as

to how it was agreed upon in the first place.

Having denied Ford's proposed 3.01 instruction, the trial court ultimately instructed the jury as follows on the negligence claim:

> A plaintiff is entitled to recover compensation for an injury that was legally caused by the negligent conduct of a defendant. And in this case the plaintiff has the burden of proving, number one, the defendant was negligent; number two that the negligence was a legal cause of injury to the plaintiff.

The foregoing instruction does not fully encapsulate Tennessee law on negligence in products liability cases. As discussed above, whether the plaintiff's claim is couched in negligence or in strict liability, as a threshold to recovery, the plaintiff must establish that the product was defective or unreasonably dangerous at the time the product left the control of the manufacturer. *Browder*, 541 S.W.2d at 404. The foregoing instruction, therefore, is not adequate because it broadly states that the jury must determine "negligence," but it does not inform the jury that such negligence must rest on an initial finding that Ford's brake products were unreasonably dangerous or defective. In this regard, the trial court erred in denying Ford's proposed T.P.I. 3.01 instruction, *supra*.

As noted above, the Stocktons also claimed that Ford was strictly liable for Mrs. Stockton's injuries. Concerning this claim, the trial court correctly instructed the jury verbatim from T.P.I. 10.01 and 10.02, which provide, in relevant part, that:

> One who manufactures or sells a defective or unreasonably dangerous product is responsible to the ultimate consumer of the product for physical harm caused to the consumer or the consumer's property if:
>
> (1) The manufacturer/seller is engaged in the business of manufacturing/selling such a product; and
> (2) It is expected to and does reach the user or consumer without substantial change in the condition in which it was manufactured and/or sold.
>
> A product is defective if it is unsafe for normal or reasonably anticipated handling and use. A product is unreasonably dangerous if it is more dangerous than would be reasonably expected by the ordinary consumer or would not be offered for sale by a reasonably careful manufacturer or seller who knew of its dangerous condition. An ordinary consumer is a consumer who purchases or uses the product with the ordinary knowledge common to the community as to its characteristics. A manufacturer is a person or company that designs, fabricates, produces, compounds, processes or assembles any product or its component parts. The word seller includes a

- 9 -

retailer, wholesaler, or distributor. A seller is any individual or organization in the business of selling a product, either for resale or for use or consumption. . . .

The seller/manufacturer of the product is not responsible for any injury to the person or property caused by the product unless the product is determined to be in a defective condition or is unreasonably dangerous at the time it left the seller's/manufacturer's control. In making this determination, you must apply the state of scientific and technological knowledge available to the seller/manufacturer at the time the product was placed on the market, rather than at the time of the injury. . . .

\*\*\*

[Instructions from T.P.I. Civil 10.02 Strict Liability—Adequacy of Warning]

Where proper instructions for use and an adequate warning of hazards are given, the seller may reasonably assume that they will be read and followed. Thus, a product is not in a defective condition, nor is it unreasonably dangerous, if:

1. The manufacturer or seller has given proper instructions for the use of a product and an adequate warning of the dangers associated with the use or misuse of the product;
2. The product is safe for use if the instructions and warning are read and followed.

Adequate and proper instructions establish procedures for efficient use and for avoiding danger. An adequate warning is one calculated to call to the attention of a reasonably careful person the nature and extent of the danger involved in using or misusing the product.

In preparing instructions and warnings, manufacturers and sellers must take into account, among other things, the intended or reasonably expected users or consumers of the product. Where a danger or hazard is apparent to the ordinary user, a product is not unreasonably dangerous or defective even if no warning is given. . . .

The foregoing instruction properly sets out the law in Tennessee concerning strict products liability in that it states that "[t]he seller/manufacturer of the product is not responsible for any injury . . . unless the product is determined to be in a defective condition or is unreasonably dangerous . . . ." The question, then, is whether the T.P.I.

- 10 -

10.01 and 10.02 instructions were sufficient to inform the jury that it would need to decide the question of whether Ford's products were unreasonably dangerous or defective when that criterion was omitted from the negligence instruction, *supra*. Unless the error in the negligence instruction "more probably than not" affected the outcome of the case, *Nye*, 347 S.W.3d at 699, the error would not be fatal to the jury's ultimate verdict. To answer that question, we turn to review the jury verdict form.

Ford proposed the following verdict form:

## FORD'S PROPOSED VERDICT FORM

Under the instructions provided by the Court, do you find that Plaintiffs have proven by a preponderance of the evidence that Ford's brakes and clutches were defective or unreasonably dangerous because of a failure to warn Mrs. Stockton of the dangers associated with brake dust from chrysotile in Ford's brakes and clutches?

a. Failure to warn as to exposures at home_____Yes____No
b. Failure to warn as to exposures in the garage_____Yes_____No.

**(If you answered "No," then your verdict should be for Ford and notify the Baliff that you have reached your verdict. If you answered "Yes," please proceed to question (2) below.)**

2. Under the instructions provided by the Court, do you find that Plaintiffs have proven by a preponderance of the evidence that Ford was negligent in failing to warn Mrs. Stockton of the dangers associated with brake dust from chrysotile in Ford's brakes and clutches?

a. Failure to warn as to exposures at home_____Yes____No
b. Failure to warn as to exposures in the garage____Yes____No

**(If you answered "No," then your verdict should be for Ford and notify the Baliff that you have reached your verdict. If you answered "Yes," please proceed to question (3) below.)**

3. Under the instructions provided by the Court, do you find that Plaintiffs have proven by a preponderance of the evidence that Ford's failure to warn was a cause in fact and legal cause of Mrs. Stockton's mesothelioma?

____Yes                    ____No

- 11 -

**(If you answered "No," then your verdict should be for Ford and notify the Baliff that you have reached your verdict. If you answered "Yes," please proceed to question (4) below.)**

The trial court denied Ford's proposed verdict form and, instead, submitted the following verdict form to the jury, which the jury answered as indicated below:

> We, the jury, present the following answers to the questions submitted by the Court:
>
> 1. Under the instructions provided by the Court, have Plaintiffs proven by a preponderance of the evidence that Defendant Ford was negligent in failing to adequately warn Joyce Stockton and was such negligence a cause of Joyce Stockton's injuries and damages?
>
> Yes___✓___     No_____
>
> 2. Under the instructions provided by the Court, have Plaintiffs proven by a preponderance of the evidence that Defendant Ford was negligent in the design of its products and was such negligence a cause of Joyce Stockton's injuries and damages?
>
> Yes_____     No_____
>
> 3. Under the instructions provided by the Court, have Plaintiffs proven by a preponderance of the evidence that Defendant Ford's products were defective or unreasonably dangerous at the time they left Defendant Ford's control and, if so, were such products a cause of Joyce Stockton's injuries and damages?
>
> Yes_____     No_____
>
> *If you answered "Yes" to either Question 1, 2, or 3, continue on to Question 4. If you answered "No" to Questions 1, 2, and 3, please sign and date the verdict form; you do not need to answer the remaining Questions.[2]*

_____

[2] Question 4, on the jury verdict form, asked the jurors to assess the percentage of fault among several other brake manufacturers and Mr. Stockton.

As set out on the jury verdict form, the jury found Ford liable in negligence, but without finding that Ford's products were unreasonably dangerous or defective. Not only does the jury form relieve Appellees from the required showing of defective or unreasonably dangerous condition, but the record also indicates that the jury was confused by the form and could not reach consensus:

> THE COURT: I have just received from the jury a note . . . . It reads, "Do we have to be in complete agreement about No. 1, 2, and 3 before moving to 4? What if we agree only on one of the questions but disagree on the other two? Can we move to No. 4?"
>
> I want input from counsel. My thought is if they can resolve one of the three questions and move forward, they need to do that. Ultimately, they may not resolve the other two and you might have issues in declaring a mistrial or whatever on the other issues. But I think they can proceed forward without.
>
> Does the plaintiff agree?
>
> [PLAINTIFFS' COUNSEL]: I agree.
>
> THE COURT: Defense agree?
>
> [DEFENDANT'S COUNSEL]: Your Honor, we think they have to have an answer on all three, a unanimous answer, whatever it is.
>
> THE COURT: . . . I disagree with defense counsel. I think they can answer the questions they can answer and proceed forward. . .

Later in the proceedings, the jury asked another question concerning the verdict form:

> THE COURT: We have a question from the jury . . . . It reads as follows: "Does every yes/no question have to be answered on page 1, or can just one question be answered yes and the other two questions be left blank?"
>
> Counselors, as I share this with you, this goes back to where we were, I guess, a day ago . . . about just answering one of the first three questions. I've stated on the record the court's position. Does the plaintiff wish to proceed further with any comment?
>
> [PLAINTIFFS' COUNSEL]: We don't believe they have to go further than that. And if you read the verdict form . . . if they answer "yes" to either 1, 2, or 3, continue on to 4. And it would appear—I mean, we don't know— but it would appear they've answered "yes" to one of them. . . .

[DEFENDANT's COUNSEL]:  We submit, Your Honor, that they have to answer the three questions. . . .

THE COURT: Thank you.  We know the jury is instructed—and I insist properly—that to answer a question, they must have a unanimous bore to do so.  . . .  I have already ruled that, in response to their question, they could proceed on because, as the verdict form says . . . "If you answered yes to either Question 1, 2, or 3, continue on to Question 4.  If you answered no to Question 1, 2, and 3, please sign the form and come back."

\*\*\*

I think the instructions were complete and adequate, and the form is complete and adequate when you consider the verdict form and the instructions together.

\*\*\*

[DEFENDANT'S COUNSEL]:  We just note our continued exception that we believe that all—that an answer is required [on] all three of [the questions] because we need that information for a proper verdict.

\*\*\*

THE COURT: I think, based upon all I've said and stated, it's very clear these are separate and distinct questions.

\*\*\*

[DEFENDANT'S COUNSEL]:  I just want to add . . . [u]nder Tennessee law . . . to find negligence, they have to find defect.  And so the questions are interrelated.  If—let's say, for example, that they check "yes" to negligence and they don't answer defect, that's a defense verdict.  So they need to answer all three questions.

THE COURT:  Thank you.  But you're absolutely wrong . . .

Respectfully, the trial court erred in its ruling.  As discussed in detail above, under either of Appellees' theories, i.e., negligence or strict liability, the jury would have to find, as a threshold criterion, that Ford's products were defective or unreasonably dangerous.  The absence of this criterion in Question 1 on the jury form negates the jury's finding of liability.  In fact, after the foregoing exchange, and with the consent of all parties, the trial

- 14 -

court polled the jurors concerning their progress:

> THE COURT: . . . Now, I ask you this question, not what your vote is either way, but the question is, have you reached a unanimous decision in this case as to Question No. 1 on the verdict form?
> [All jurors answered "Yes"]
>
> ***
>
> I ask you, ladies and gentlemen of the jury, have you reached a unanimous decision as to Question 2 on the verdict form?
>
> [All jurors answered "No"]
>
> ***
>
> As to Question 2 . . . do you believe or find that further deliberations could possibly result in a unanimous decision as to Question 2?
>
> [All jurors answered "No"]
>
> ***
>
> Now . . . as to Question 3, have you reached a unanimous verdict in response to Question 3 on page 1 of the verdict form?
>
> [All jurors answered "No]
>
> ***
>
> Do you believe or find that further deliberations could possibly result in a unanimous verdict as to Question 3 on page 1 of the verdict form?
>
> [All jurors answered "No]

Clearly, the jury could not reach agreement on question 3, i.e., "have Plaintiffs proven by a preponderance of the evidence that Defendant Ford's products were defective or unreasonably dangerous . . . ." ***Browder***, 541 S.W.2d at 404. In the absence of a defective or unreasonably dangerous finding, the jury could not have properly found that "Defendant Ford was negligent in failing to adequately warn Joyce Stockton." ***Id***. In this regard, the jury's verdict is inconsistent, and its finding of negligence is irreconcilable. "Tennessee law is well established that litigants are entitled to have their rights settled by a consistent and intelligible verdict, and verdicts that are inconsistent and irreconcilable

cannot stand." ***Concrete Spaces, Inc. v. Sender***, 2 S.W.3d 901, 911 (Tenn. 1999); ***Milliken v. Smith***, 405 S.W.2d 475, 476 (Tenn. 1966) ("verdicts which are inconsistent and irreconcilable must not be allowed to stand."). Accordingly, when "a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a new trial." ***Concrete Spaces***, 2 S.W.3d at 911. The reasoning underlying this rule is that, with inconsistent and unintelligible verdicts, "it cannot be told with reasonably certainty what facts the jury found." ***Berr v. Foster***, 287 S.W.2d 16, 18 (Tenn. 1955) (quoting ***Gray v. Brooklyn Heights R.R. Co.***, 67 N.E. 899, 900 (N.Y. 1903)). In other words, an inconsistent verdict is "no verdict at all." ***McInturff v. White***, 565 S.W.2d 478, 482 (Tenn. 1976).

### IV. Foreseeability, Duty, and Causation

In addition to the fact that the jury did not answer the threshold question of whether Ford's products were unreasonably dangerous or defective, the jury also did not consider the question of whether Mrs. Stockton's injuries were reasonably foreseeable. As set out above, the trial court instructed the jury to first answer the question "have Plaintiffs proven by a preponderance of the evidence that Defendant Ford was negligent in failing to adequately warn Joyce Stockton and was such negligence a cause of Joyce Stockton's injuries and damages." To prevail on a negligence claim, a plaintiff must establish: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. ***Satterfield v. Breeding Insulation Co., et al.***, 266 S.W.3d 347, 356 (Tenn. 2008). By first asking the jury to determine whether Ford "was negligent in failing to adequately warn Joyce Stockton and was such negligence a cause of Joyce Stockton's injuries," the trial court conflates the prima facie elements of duty, breach, and causation into a single inquiry, and overlooks the jury's role in the question of foreseeability as it relates to breach and causation, discussed *infra*.

Ford argues that Ford owed no legal duty to Mrs. Stockton. In a footnote to its proposed jury verdict form, Ford states: "Ford recognizes that the Court rejected its argument that Ford had no duty to warn as to take-home exposures." The record does not contain the exact basis for the trial court's initial ruling on the duty question. However, as C.J. Swiney points out, in his separate concurring opinion, in ruling on Ford's motion for directed verdict or new trial, the trial court stated: "This is another situation where, of course, the Court finds again, as I previously ruled, that *Satterfield*, a 2008 case, applies here. There was a duty existing under Tennessee law." From this statement, we know that the trial court relied on the *Satterfield* case in declining to hold, as a matter of law, that there was no duty owed by Ford to Mrs. Stockton. Although there is no evidence that the trial court engaged in the detailed duty analysis that the Tennessee Supreme Court applied in *Satterfield* (a fact that J. Stafford, in his partial dissent, argues was error), the trial court, nonetheless, concluded (at least inferentially) that the ***Satterfield***

- 16 -

holding extends Ford's legal duty to Mrs. Stockton. The question, then, is whether the trial court erred in its application of *Satterfield* and its ultimate decision to decline to find, as a matter of law, that Ford owed no duty in this case. We now turn to that discussion.

At the foundation of negligence law is the idea that people have a duty, i.e., a legal obligation, to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." ***Burroughs v. Magee***, 118 S.W.2d 323, 328-29 (Tenn. 2003). While this basic concept is not, on its face, difficult to understand, the application of duty in various cases has been muddled by the elusive idea of foreseeability, discussed *infra*. In *Satterfield*, the Tennessee Supreme Court acknowledges the basic tenant of negligence law, stating that "Tennessee law currently provides that one owes a duty to refrain from engaging in conduct that creates an **unreasonable and foreseeable** risk of harm to others." *Satterfield*, 266 S.W.3d at 363 (citations omitted) (emphasis added). The Restatement (Third) of Torts § 7: Liability for Physical and Emotional Harm encapsulates this tenant of duty in negligence law as follows:

> (a) An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.
>
> (b) In exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification.

The Restatement (Third) of Torts Reporters' adoption of the foregoing concept of duty ostensibly takes foreseeability out of the duty equation and lessens the role of the judge in determining duty as a matter of law. Put another way, if duty exists as a default position, then a judge would only need to decide the question of duty in "exceptional cases" where "principles or policy" (read: not lack of foreseeability) dictate the rare case where no duty is determined as a matter of law. As explained by the Tennessee Supreme Court in *Satterfield*, concerning the question of duty, "[a] court's function is more limited than a jury's. As a practical matter, a court serves as a gate-keeper and may exclude a claim only if it finds, as a matter of law, that the defendant does not owe a duty to the plaintiff." *Satterfield.,* 266 S.W.3d at 368. Appellants would limit the *Satterfield* holding to extend the duty owed, by a manufacturer of asbestos containing products, only to those with whom the manufacturer's employee comes into regular and close contact. *Satterfield*, 266 S.W.3d at 352 ("The employer owed a duty to those who regularly and for extended periods of time came into close contact with the asbestos-contaminated work clothes of its employees . . . ."). However, Appellants' narrow reading of the duty holding in *Satterfield* ignores the fact that the *Satterfield* Court espoused a broad view of duty in take-home asbestos cases by holding that duty may exist even in the absence of privity,

- 17 -

i.e., a special relationship.  In so holding, the *Satterfield* Court relied on the Restatement (Third) of Torts:

> While [some] courts . . . that have found, as a matter of law, that employers have a duty in take-home asbestos exposure cases, rely on the absence of a special relationship, this argument is misplaced under Tennessee tort law as it has developed over the years.  This Court has recognized that a duty of reasonable care arises whenever a defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property.  *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).  Thus, like the drafters of the new Restatement (Third) of Torts containing the principles applicable to liability for physical harm, we are of the view that
>
>> [e]ven when the actor and victim are complete strangers and have no relationship, the basis for the ordinary duty of reasonable care . . . is conduct that creates a risk to another.  Thus, a relationship ordinarily is not what defines the line between duty and no-duty; conduct creating risk to another is.
>
> Restatement (Third) of Torts

*Satterfield*, 266 S.W.3d at 362-63.  Indeed, the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 6 provides, broadly, that "[a]n actor whose negligence is a factual cause of physical harm is subject to liability for any such harm within the scope of liability, unless the court determines that the ordinary duty of reasonable care is inapplicable."  Here, we do not know whether the trial court made an affirmative finding that there was a duty owed by Ford to Mrs. Stockton; rather, from what we can glean from the record, we know that the trial court declined to find, as a matter of law, that there was not a duty owed by Ford to Mrs. Stockton.  Applying the holding in *Satterfield* to the instant case, we cannot conclude that the trial court erred in its ruling denying Ford's motion concerning the duty issue.

The Restatement (Third) of Torts asserts a "strong default rule that each person has a duty to exercise reasonable care not to injure another; this default rule almost operates as a presumption."  Benjamin C. Zipursky, Foreseeability in Breach, Duty, and Proximate Cause, 44 Wake Forest L. Rev. 1247, 1251 (2009)   In drafting The Restatement (Third) of Torts, the Reporters were clearly concerned with the concept of foreseeability in the duty, breach, and causation elements of negligence and the respective role of the judge and jury in each of these inquiries.  As to the role of foreseeability in duty, the Reporters are concerned that

> courts sometimes usurp the jury's function of determining breach by mischaracterizing a breach of duty issue and then claiming the prerogative to decide the duty issue as a matter of law.  They do this because duty is an

- 18 -

issue for the court, and unforseeability is sometimes deemed a ground for no duty. It is critical . . . to see that when unforseeability is being deemed a ground for no duty, the court is just flipping around the words "breach" and "duty."

Zipurskwy, *supra*, at 1251 (citing Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7). Accordingly, the Reporters "want to eliminate foreseeability in duty so that judges do not invade the province of the jury." *Id.* at 1274; *see also* W. Jonathan Cardi, Purging Foreseeability The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts, 58 Vand. L. Rev. 739 (2005). Professor Cardi explains the role of foreseeability in the context of breach and proximate cause as follows:

The brand of foreseeability associated with breach is one of general focus. That is, it does not examine the foreseeability of the particular injury suffered by the plaintiff, but the foreseeable likelihood and severity of the injuries that might have occurred. . . . Thus, it might be said that in the context of breach, foreseeability's concern is risk generally, not whether a particular result is one for which defendant should be held liable. This latter concern is addressed by proximate cause.

\*\*\*

Proximate cause . . . focuses on the nature and extent of the connection between a defendant's unreasonable conduct and the plaintiff's injury and cuts off liability at the point where "the harm that resulted from the defendant's negligence is so clearly outside the risks created that it would be unjust or at least impractical to impose liability. . . .

Furthermore, foreseeability in the context of proximate cause does not help to decide whether the defendant acted unreasonably, as in the context of breach, but rather aids in the decision of whether the actual consequences of defendant's conduct were so bizarre or far-removed from the risks that made the actor's conduct negligent that the defendant, though blameworthy, should not be held liable.

Cardi, *supra*, at 747-49. Professor Cardi concedes that the question of when a resulting harm falls outside the risk of the tortfeasor's conduct has no clear answer. *Id.* at 748. Accordingly, such questions are best left to the purview of the jury. Professor Cardi opines that, "[d]espite overlap in the choices underlying duty and proximate cause . . . they stand as separate elements and serve different conceptual purposes;" however, "appellate courts frequently treat the proximate cause issue as if it were a question of law." *Id.* at 750. This is an issue that Justice Holder addresses in her dissent in

*Satterfield*:

> By incorporating foreseeability into an analysis of duty, the majority transforms a factual question into a legal issue and expands the authority of judges at the expense of juries. *See **City of Elizabethton v. Sluder**,* 534 S.W.2d 115, 117 (Tenn. 1976) (noting that foreseeability is a jury issue). A collection of twelve people representing a cross-section of the public is better suited than any judge to make the common-sense and experience-based judgment of foreseeability.

**Satterfield**, 266 S.W.3d at 376 (Holder, J. dissenting). The majority in **Satterfield** applied a foreseeability analysis in holding that Alcoa owed a duty to Ms. Satterfield. In relevant part, the Court held:

> Because the risk of Ms. Satterfield being exposed to the asbestos fibers on her father's work clothes was foreseeable, the analysis shifts to considering the balancing factors: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with the safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct. ***Burroughs v. Magee***, 118 S.W.3d at 329; ***McCall v. Wilder***, 913 S.W.2d [150,] at 153 [(Tenn. 1995)].

**Satterfield**¸ 266 S.W.3d at 367. Although the majority clearly makes a foreseeability of harm determination in weighing the foregoing factors, it cautions that, "[w]hen considering these factors, courts should take care not to invade the province of the jury. A court's function is more limited than a jury's." ***Id.*** at 367-68. In her dissent, Justice Holder opines that the majority's position invades the province of the jury concerning questions of foreseeability:

> I remain concerned about the role that foreseeability plays in the majority's understanding of duty. Foreseeability enters the majority's analysis in two related ways. First, foreseeability forms a part of the majority's basic explanation of when a duty arises. For example, the majority states that "'all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others.'" (quoting ***Burroughs v. Magee***, 118 S.W.3d 323, 328 (Tenn. 2003); ***Bradshaw***, 854 S.W.2d at 870) (emphasis added). Second, foreseeability is a key component of the public policy balancing test employed by the majority. ***Burroughs***, 118 S.W.3d at 329; ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn.1995).

> As I have often stated, the foreseeability of an injury or risk is more properly considered an element of breach of duty or proximate cause. *Hale v. Ostrow*, 166 S.W.3d 713, 720 (Tenn. 2005) (Holder, J., concurring and dissenting); *Staples* [*v. CBL & Associates, Inc.*,] 15 S.W.3d [83,] at 9[2] [(Tenn. 2000)] (Holder, J., concurring); *accord* W. Jonathan Cardi, <u>Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts</u>, 58 Vand. L. Rev. 739, 744-50 (2005). This observation is important primarily because the existence of duty is determined by courts as a matter of law while breach of duty and proximate cause are fact-based inquiries to be determined by juries. *West* [*v. East Tennessee Pioneer Oil Co.*,] 172 S.W.3d [545,] at 556 (Tenn. 2005) (observing that breach of duty and proximate causation are factual determinations); *Staples*, 15 S.W.3d at 89 (holding that existence of duty is a matter of law).

*Satterfield*, 266 S.W.3d at 375-76 (Holder, J. dissenting).  Professor Cardi opines that "concept of foreseeability is a scourge, and its role in negligence cases is a vexing, crisscrossed morass."  Cardi, *supra*, at 740.  The *Satterfield* case elucidates this point. Clearly, the respective roles of judge and jury in the foreseeability inquiry is not settled in Tennessee.  The *Satterfield* Court acknowledges the fact that foreseeability is paramount to negligence:

> While every balancing factor is significant, the foreseeability factor has taken on paramount importance in Tennessee. *Hale v. Ostrow*, 166 S.W.3d 713, 716-17 (Tenn. 2005); *Biscan v. Brown*, 160 S.W.3d [462,] at 480 [(Tenn. 2005)]. This factor is so important that if an injury could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established. *Doe v. Linder Constr. Co*., 845 S.W.2d 173, 178 (Tenn. 1992). Conversely, foreseeability alone is insufficient to create a duty. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 904 (Tenn. 1996). Thus, to prevail on a negligence claim, a plaintiff must show that the risk was foreseeable, but that showing is not, in and of itself, sufficient to create a duty. Instead, if a risk is foreseeable, courts then undertake the balancing analysis.

*Satterfield*, 266 S.W.3d at 366.  The Court also acknowledges that foreseeability informs both questions of law (i.e., duty) and questions of fact (i.e., causation) in a negligence analysis:

> The role that the concept of foreseeability plays in the context of a court's determination of the existence and scope of a duty differs from the role the concept plays when the fact-finder is addressing proximate causation. For a duty to exist, the defendant's "conduct must create a recognizable risk of

harm to the [plaintiff] individually, or to a class of persons—as, for example, all persons within a given area of danger—of which the [plaintiff] is a member." Restatement (Second) of Torts § 281 cmt. c, at 4-5. However, because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome might be conceivable is not sufficient to give rise to a duty. For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it. In this context, the courts are not concerned with the ultimate reasonableness, or lack of reasonableness, of the defendant's conduct. Rather, the courts are simply ascertaining "whether [the] defendant was obligated to be vigilant of a certain sort of harm to the plaintiff."

*Id.* at 366-67. However, the Court draws no clear line as to when the determination of foreseeability should fall to the judge and when it should fall to the jury. To clarify the respective role of judge and jury in foreseeability determinations, Justice Holder advocates adoption of the Restatement (Third) of Torts' position that foreseeability has no place in the judge's determination of whether a duty exists, and thus the determination of foreseeability should rest with the jury alone. The ***Satterfield*** majority

attempts to support the integration of duty and foreseeability by arguing that foreseeability plays a different role in the duty context than it does in the context of breach of duty or proximate cause. In support of its position, the majority cites to cases that propose a distinction between the foreseeability of a general threat of harm to others and the foreseeability of the specific harm suffered by the plaintiff. ***McCain v. Fla. Power*** Corp, 593 So.2d 500, 502-04 (Fla. 1992); ***Kroll v. Bd. of Regents of Univ. of Neb.***, 258 Neb. 1, 601 N.W.2d 757, 763 (1999). According to these cases, the former analysis is relevant to duty while the latter is relevant to proximate cause. McCain, 593 So.2d at 502-04; Knoll, 601 N.W.2d at 763. The majority places this distinction in its own terms, stating, "For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it."

*Satterfield*, 266 S.W.3d at 376 (Holder, J. dissenting). Justice Holder argues that the majority's distinction between general and specific foreseeability, while valid in theory, "is difficult, if not impossible, to apply in practice." *Id.* at 377 (Holder, J. dissenting). In other words, the question of foreseeability in duty and foreseeability in causation are so inseparable that it is impossible to make a distinction between foreseeability in duty and foreseeability in causation. Thus, she opines that the foreseeability question is one for the

jury alone. *Id.* at 377 (Holder, J. dissenting) ("I firmly believe . . . that analyzing foreseeability in the context of duty is inherently problematic and that the Restatement (Third) of Torts presents a wiser approach."). The concept of foreseeability remains an elusive and indefinite concept in our jurisprudence.[3]

Turning back to the instant appeal, as discussed above, the trial court did not conclude, as a matter of law, that there was no duty owed by Ford to Mrs. Stockton. Based on the holding in *Satterfield*, which adopts (in part) the Restatement (Third) of Torts, we conclude that the court's decision to allow the case to go forward on the element of duty was not error. However, the determination of breach and causation still remain. These are questions of fact for the jury. Specifically, the question of whether the probability or likelihood of harm to Mrs. Stockton is sufficiently foreseeable to induce a reasonable person to take precautions to avoid it, or whether her injuries were so tenuous and removed from Ford's conduct as to preclude a finding of foreseeability, is a question for the jury. Accordingly, on remand, the jury should be instructed not only on the question of whether Ford's product was unreasonably dangerous or defective, but also on whether Mrs. Stockton's injuries were reasonably foreseeable. These two questions should be presented on the verdict form. Only if the jury answers affirmatively to both of these questions should it be allowed to continue to the question of whether Ford breached its duty to Mrs. Stockton and, if so, whether that breach was a cause of her injuries. In the absence of a finding that Ford's product was defective or unreasonably dangerous and that Mrs. Stockton's injuries were reasonably foreseeable, the jury's finding of negligence cannot stand. In view of this holding, we pretermit Appellant's remaining issues.

Before concluding, we write briefly in response to J. Stafford's partial dissent, wherein he states that "[t]he majority Opinion . . . appears to suggest that the issue of duty has been converted to a question to be determined by the jury simply because the matter was allowed to be heard by a jury." Respectfully, the dissent misapprehends the majority holding. The question of duty, in negligence, remains a question of law and not of fact. As J. Stafford notes, "in this case, the **trial court determined** that a duty existed and allowed this case to proceed to a trial on the merits." (Emphasis added). The *Satterfield* case is distinguishable from the instant case insofar as the trial court, in *Satterfield*, held, as a matter of law, that Alcoa did not owe a duty to Ms. Satterfield. Here, the trial court did not find, as a matter of law, that Ford owed no duty to Mrs. Stockton. In *Satterfield*, the Tennessee Supreme Court cited, with approval, the Restatement (Third) of Torts approach to duty, which is that a duty may exist "[e]ven when the actor and victim are complete strangers and have no relationship [because] the basis for the ordinary duty of reasonable care . . . is conduct that creates a risk to another. Thus, a relationship ordinarily is not what defines the line between duty and no-duty;

---

[3] We encourage the Tennessee Supreme Court to revisit the question of whether Tennessee should adopt the Restatement (Third) of Torts' approach to foreseeability.

- 23 -

conduct creating risk to another is." ***Satterfield***, 266 S.W.3d at 362-63 (citing Restatement (Third) of Torts). In this opinion, we have referred to this approach as a "default position," meaning only that duty will usually exist when a plaintiff has been harmed by a defendant's product. J. Stafford opines that "the ***Satterfield*** Court did not rule that the existence of a duty was a 'default position.'" Semantics aside, J. Stafford advocates for application of the ***Satterfield*** Court's "intricate rules for determining [the] issue [of duty]" in every case where the existence of a duty is raised as an issue, regardless of whether the trial court found a duty or not. We opine that the ***Satterfield*** Court's adoption, at least in part, of the Restatement (Third) of Torts approach to duty negates the need for an intricate analysis on the duty question unless the trial court finds (as it did in ***Satterfield***) that there is no duty as a matter of law. Because such finding is against the trend in negligence law, as set out in the Restatement (Third), if a trial court determines that no duty exists, a reviewing court must go through the duty analysis in order to review, as a question of law, the trial court's determination on duty. However, where the trial court declines to find that there is no duty, which is the scenario here, the case may proceed to the jury, not on the question of duty, but on the question of whether the duty was breached and, if so, whether the breach was the cause of the plaintiff's harm. Accordingly, had the trial court, in this case, determined that there was no duty, we would be required to engage in a de novo review of the legal question of whether the trial court erred, as a matter of law, in so holding. However, because the trial court did not find that there was no duty owed, it is unnecessary to engage in the ***Satterfield*** analysis.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's judgment on the jury verdict. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellees, Joyce and Ronnie Stockton, for all of which execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

- 24 -